**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| PETER COHEN, individually, and on behalf of all others similarly situated, | Civil Action No.:  1:17-cv-23230-MGC |
| Plaintiff | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| POWERBLOCK, INC. | |
| Defendant. | |

**NATURE OF THE ACTION**

1.      Plaintiff Peter Cohen ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon personal knowledge as to his own acts and, as to all other allegations, upon information and belief, and upon investigation by counsel.

2.      Plaintiff brings this class action on behalf of himself and a class of persons who purchased PowerBlock Urethane Series Dumbbells ("PowerBlocks") from January 1, 2010, to the present (the "Class") against Defendant PowerBlock, Inc. ("Defendant").

3.      The Urethane Series is the most expensive model of weights marketed and sold by Defendant, with the heaviest (and most expensive) set having an MSRP of $1,396.  Defendant markets its dumbbells with the tagline "World's Best Dumbbell."  PowerBlocks are sold with a lifetime warranty.

4.      However, as detailed below, PowerBlocks do not perform as advertised and warranted because they are made with substandard quality materials, that, by the company's own admission, do not perform well and indeed fail in warm environments.  Specifically, the PowerBlock Urethane Series uses a urethane coating on the weight plates that cracks and breaks

when exposed to warm conditions.  This defect creates a significant safety hazard because the weights can and have failed during exercises in a position where the weights can fall on the individual exercising.  Also, as a result of the defect, the weights often break apart when removed from the Rack or Column Stands.  The defect is present as the result of the design and manufacturing process.  Each set of PowerBlocks possesses this latent defect.

5.      Plaintiff was damaged, in an amount to be determined at trial, because he did not get the product—dumbbells—for which he bargained.  Despite Defendant's assertions concerning the quality of the PowerBlocks, and its advertising position that the Urethane Series is superior to its other offerings, they were not of merchantable quality.

6.      Defendant's marketing and sales concealed and omitted material information, were designed to mislead and deceive consumers, and therefore constitute violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*., and Florida warranty law.

**JURISDICTION AND VENUE**

7.      The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332(d), because there are at least 100 Class members in the proposed Class, the combined claims of proposed Class members exceed $5,000,000 exclusive of interest and costs, and at least one Class member—including Plaintiff—is a citizen of a state other than Defendant's state of citizenship.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.      Defendant sells dumbbell systems through various distribution channels throughout the United States, including in Florida.  Defendant purposefully avails itself of the Florida consumer market, distributing, disseminating, and advertising in Florida.

9.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims asserted occurred in this District, and Plaintiff is domiciled in this District.  Venue is also proper in this District because Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District, through the promotion, sale, and marketing of its products in this District.

## THE PARTIES

10.     Plaintiff Peter Cohen resides in Miami, Florida.  After viewing advertisements and promotional materials created and disseminated by Defendant, in or about the Fall of 2010, Plaintiff purchased the Urethane Series PowerBlocks. Plaintiff expressly saw and relied upon the lifetime warranty and other statements concerning the quality and durability of the Urethane Series in making his purchase decision.  The materials relied upon by Plaintiff included a brochure and other materials prepared and disseminated by Defendant comparing the Urethane Series to other weights sets made by Defendant and claiming that the Urethane Series is superior and more durable.  These assertions were and are false, and stand in contrast to the statements of Defendant's employee, Scott Bjorkquist, to Plaintiff earlier this year.  Plaintiff specifically elected the Urethane Series because it was purported to be of higher quality than the Sport and Classic Series.  In or about July 2015, the PowerBlocks failed.  Plaintiff contacted Defendant and received replacements of specific (weighted) blocks, which were sent pursuant to the warranty. Two years later, in June 2017, the replacement weights failed.  Plaintiff again contacted Defendant and was informed that when exposed to heat, the urethane-coated blocks fail. Plaintiff expressed concern regarding the safety of the defective urethane weights.  Despite Plaintiff's concerns, he was told that he could either receive a new urethane set under the

3

warranty or pay full price for the less expensive Sport or Classic series, which do not suffer from the defect.

11.     Defendant PowerBlock, Inc. is a Minnesota corporation with its principal executive office located at 1071 32nd Ave NW, Owatonna, MN 55060.  According to its website, PowerBlock, Inc. was founded in 1991 by a small group of specialty fitness equipment designers.  Defendant markets and sells its products directly to consumers and also sells its products through a network of authorized dealers, including big box sports stores such as Dick's Sporting Goods.

**<u>FACTUAL ALLEGATIONS</u>**

12.     Throughout the class period Defendant has manufactured, marketed, distributed and sold PowerBlocks throughout the United States via its website, toll free number, and a network of authorized dealers.

13.     Defendant's advertising for PowerBlocks indicates that PowerBlocks are the World's Best Dumbbells.  Defendant sells one category of weights for home use and one category for commercial use.  Plaintiff's set is a home use set.  There are three levels of weights offered among home use sets.  The most expensive level is the Urethane Series, which is what Plaintiff purchased.  Consistent with the materials Plaintiff reviewed prior to purchase, Defendant explains the basis for the higher price tag on its website as follows, and highlighting the value of the Urethane Series relative to other models and touting the lifetime warranty, which is illusory since Defendant will only agree to provide replacements that are equally defective and unreasonably dangerous:

> **In looking at the different models, I see the Urethane is the most expensive. Why should I spend extra for the Urethane models?**

4

We believe the Urethane Series models offers additional features well worth the extra money. First, the Urethane Series offers a Lifetime Warranty for home use. As we set out to improve our dumbbells over the years and developed the Urethane, it tested so well we decided to give it the Ultimate product stamp of approval, a Lifetime Warranty. The reasons for the improved durability over the welded steel models is the ability of the weight plates and selector pins to "flex" and absorb energy. We also feel as though the enhanced appearance of the product not only makes it more durable, but the most eye appealing as well. It is also the quietest dumbbells we offer with the steel plates being Urethane coated and thus no metal on metal contact. The Urethane coating also has a self lubricating quality to it making the plates slide in and out smoother than painted metal weight plates. Due to the increase of the popularity and production of the Urethane Series, the price has also dropped considerably over the last few months (20%) making it an even better value.

## Defendant's Lifetime Warranties

14.     The lifetime warranty touted by Defendant states, in pertinent part,

1. LIMITED LIFETIME WARRANTY on weights, side rails and handle assembly. If the weight plates, side rails or handle assembly, should crack or break, it will be repaired OR replaced by Manufacturer.
2. If the following parts are defective in material or workmanship, manufacturer will supply replacement parts: weight selector pins, other parts not listed.
3. CONDITIONS AND EXCEPTIONS. A.) Any product misuse, abuse or alteration, any attempt to repair, by a person other than an authorized manufacturer's service center, any improper assembly, accident or any other condition resulting from occurrences beyond the control of the manufacturer will void this Limited Warranty. An example of abuse would be dropping the product; Dropping the weight plates from a height of more than 12 inches will void the warranty. B.) This Warranty shall apply only in the United States, it's territories or possessions, and Canada. C.) Chipping, peeling and scratching of paint and/or color bands is not warranted. D.) See CARE AND MAINTENANCE for specific examples of actions that would result in voiding warranty.

15.     The warranty also includes a provision regarding implied warranties, which provides that the implied warranties shall last as long as the other terms of the warranty, which in this case is a lifetime.  The terms of the implied warranties are described by Defendant as follows:

5

8. LIMITATION OF IMPLIED WARRANTIES. All implied warranties, except to the extent prohibited by applicable law, shall have no greater duration than the warranty periods set forth above. There are no warranties which extend beyond description in this Limited Warranty. Because some states do not allow limitations on how long an implied warranty lasts, the above limitation may not apply to you.

**Plaintiff's Experience**

16.     Defendant's website advertises the Urethane Series PowerBlocks as having "improved durability over the welded steel models…"  Defendant's written materials for the Urethane Series Power Blocks tout the safety and durability of the product.  The current brochure available on Defendant's website represents that free weights like the PowerBlocks "cannot be beat" for "safety" and promises that "the Urethane PowerBlocks offer the… most durable PowerBlocks ever."  Available at:

http://www.powerblock.com/homebrochures/directbrochure.pdf (last checked Nov. 8, 2017).

These assertions are substantively identical to the brochure reviewed by Plaintiff pre-purchase.

17.     In or about the fall of 2010, after seeing the advertisements and promotional materials created and disseminated by Defendant, Plaintiff purchased the PowerBlock Urethane Series U90 Stage 4 in reliance upon, among other things, Defendant's affirmations regarding the safety and durability of the product, as well as the lifetime warranty provided with his PowerBlocks.  Plaintiff considered the various products available on the market and determined, in reliance upon the aforementioned representations, that it was worth paying a premium for the product.  Through Defendant's misstatements and active concealment of the true facts regarding the defect, Plaintiff was unaware of the reality that the PowerBlocks were and are defective and dangerous—in direct contrast to Defendant's assertions to the contrary.

18.     In or about July 2015, Plaintiff's weights cracked and broke.  As can be seen from the following pictures, the weights were no longer usable:

6







19.     Even the weights that had not yet broken appeared cracked and on the verge of breaking.



20. In response, Plaintiff sent an email to Defendant on July 3, 2015, which stated, as follows:

> To Whom It May Concern:
>
> Four years ago, I bought a complete Powerblock set with the stand. The weights are in my house, and they get only marginal use. I am the only one who uses them, and I would estimate that I use them no more than once a week. I never drop the weights, as I am quite diligent with caring for them.
>
> Today, when I went to use them, I noticed one of the Powerblocks was not sitting properly on the stand. I then realized that the heaviest two weights had broken. I took several pictures and have attached them to this email.
>
> I have several questions and concerns:
> - Do you consider this normal?
> - Will you replace the weights?
> - I am concerned about using the rest of the weights at this point, as I fear they could break while using them. It seems like that could result in terrible injury.
>
> Can you please contact me either by email or at the phone numbers below?
>
> Thank you very much for your attention to this matter.

21. After a series of communications with Defendant, the specific weights that failed were ultimately replaced pursuant to the warranty. Unbeknownst to Plaintiff the replacement parts were also defective. At no time during these communications did Defendant indicate to Plaintiff that the problem with his PowerBlocks was anything other than an anomaly. Indeed, based on his communications with Defendant, Plaintiff continued to believe that the PowerBlocks were safe and durable and that the cracking and breaking that had occurred was merely a malfunction with his specific set of PowerBlocks. Defendant represented to Plaintiff— and Plaintiff believed—that the replacement weights Defendant was providing pursuant to the Lifetime Warranty would be safe and durable, consistent with the representations Defendant made in its advertising materials.

22.     However, on or about June 2017, other weights in Plaintiff's set also broke.  As

the following pictures demonstrate, the weights failed in much the same fashion.









23.     Given that Plaintiff was performing exercises that required lifting the substantial weights over his head (as heavy as 90 pounds on each side), he again expressed real concerns about the safety of the weights in his subsequent communications with the Defendant.

24.     On June 23, 2017, Plaintiff spoke with Scott Bjorkquist from Defendant's customer service department.  Mr. Bjorkquist asked a series of questions of Plaintiff.  Plaintiff answered Mr. Bjorkquist's questions.  Mr. Bjorkquist asked Plaintiff where he stored the weights and Plaintiff explained that he kept the weights in Plaintiff's garage.  After learning that Plaintiff lives in Miami, Mr. Bjorkquist explained that the PowerBlocks could not tolerate the heat and that was the reason both sets had broken.  Mr. Bjorkquist explained that the same thing would very likely happen to a third set.  Mr. Bjorkquist explained that the problem Plaintiff experienced with the Urethane Series would be ameliorated with the Sport and Classic Series.  Plaintiff then asked if he could have his top-of-the-line PowerBlocks replaced with one of the lesser series to ensure his safety.  Mr. Bjorkquist refused.  Mr. Bjorkquist, after acknowledging the heat defect in the PowerBlocks, still maintained that Plaintiff's only options were to have his second set

replaced with a third set of PowerBlocks that would suffer from the same defect or pay full price for an alternative set from a lesser series.

25. It was not until Plaintiff's June 23, 2017 conversation with Mr. Bjorkquist that Plaintiff understood that the PowerBlocks were defectively designed and that any replacement PowerBlocks sent to him would also be defective and unreasonably dangerous.

26. In prior communications with Plaintiff, Defendant's representatives had concealed Defendant's actual knowledge of the defective quality of the PowerBlocks.

27. Indeed, Defendant knew or through the exercise of reasonable care should have known that the PowerBlocks were defective back in 2010 when Plaintiff first purchased them. Notwithstanding its pre-sale knowledge of the defective nature and quality of the PowerBlocks, Defendant has concealed this defect and continued to falsely represent to consumers in its promotional and advertising materials that the Urethane PowerBlocks are a safe and durable product—indeed safer and more durable than the Classic and Sports Series sets. In reasonable reliance on these misrepresentations, Plaintiff and other Class members have purchased the PowerBlocks. No reasonable consumer would purchase a product with a known defect capable of breaking and causing significant injury.

28. In an email dated June 26, 2017, Mr. Bjorkquist followed up and explained the only two options available to Plaintiff:

Good morning Peter,

As per our conversation here are the two options.

1) Replace your set under warranty.

2) I can offer free shipping on the Sport EXP Stage 3 Set.(A total of $627 for the set)

Let me know which route you would like to take.

14

Best regards,
Scott

29.     Defendant's Lifetime Warranty is procedurally and substantively unconscionable because the purported benefit the warranty claims to provide to consumers is actually devoid of any value.  Defendant sells the PowerBlock Urethane Series—a product that Defendant well knows is defective because it regularly fails due to heat, and then provides purchasers with a lifetime warranty that provides for replacement of the defective Urethane PowerBlock with another set of defective Urethane PowerBlock.  Rather than fixing the defect, Defendant exposes consumers to an unreasonable risk of physical harm by continuing to market and sell PowerBlock weights that pose an unreasonable risk of injury to users.

30.     Given the fact that Defendant is well aware of the defect and refused to provide a less expensive product, Plaintiff was left with no choice but to seek counsel to secure redress on his behalf.

31.     Indeed, Plaintiff is not alone in experiencing the defect.  Recent complaints echoing the same issues are readily available.  For example, the following complaint was posted in January 2017 on Amazon:

Beware of Material Failure
By Amazon Customer on January 9, 2017
Hi I am a U 90 user based in Singapore.
My Power Block disintegrate while I was doing my workout causing the weight to hit my foot.

Attached are the pictures of the failure.
Will the lifetime warranty cover such material failure?

It's shocking that I came apart like that. I don't know if any of your customers faced the same challenge or have been injured.

15

## CLASS ALLEGATIONS

32.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff seeks certification of the following Class:

> All persons in the United States who have purchased PowerBlocks from the Urethane Series (the "Class").

33.     For the Florida state-based claims, Plaintiff pleads a Florida Subclass defined as follows:

> All persons in the state of Florida who have purchased PowerBlocks from the Urethane Series (the "Florida Subclass").

34.     Plaintiff and the members of the Class are so numerous that joinder of all members individually, in one action or otherwise, is impractical.  Defendant's national marketing and advertising campaigns target consumers across the country.  The precise number of Class members and their identities are unknown to Plaintiff at this time, but can and will be determined through discovery.  Upon information and belief, Plaintiff believes that the Class numbers at least in the thousands.  Class members may be notified of the pendency of this action by mail and/or publication.

35.     This action involves questions of law and fact common to Plaintiff and all members of the Class, resolution of which will resolve the issues for all Class members. These common issues include the following:

(a)     Whether PowerBlocks have a latent defect;

(b)     Whether Defendant violated its warranty obligations to Plaintiff and the proposed Class;

(c)     Whether Defendant violated Florida Deceptive and Unfair Trade Practices Act; and

(d)      Whether Plaintiff and Class members sustained damages resulting from Defendant's conduct and, if so, the proper measure of damages, restitution, equitable, or other relief.

36.      Plaintiff understands and is willing to undertake the responsibilities of acting in a representative capacity on behalf of the proposed Class.  Plaintiff will fairly and adequately protect the interests of the Class and has no interests adverse to, or which directly conflict with, the interests of the other members of the Class.

37.       Plaintiff has engaged the services of counsel who are experienced in complex class litigation, who will adequately prosecute this action, and who will assert and protect the rights of and otherwise represent Plaintiff and the absent Class members.

38.      Plaintiff's claims are typical of those of the absent Class members because Plaintiff and the Class members each sustained damages arising from Defendant's wrongful conduct, as alleged more fully herein.

39.      This action is brought under Rule 23 because Defendant has acted on grounds generally applicable to all members of the Class and/or because questions of law or fact common to Class members predominate over any questions affecting only individual members.

40.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical as a class action than piecemeal individual determinations.

41.      Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude maintenance as a class action.

**TOLLING OF STATUTES OF LIMITATION**

42.     Any applicable statute(s) of limitations has been tolled by Defendant's knowing and active concealment of the facts alleged herein.  Plaintiff could not have reasonably discovered the true nature of the PowerBlocks until after they failed.  Similarly, the Class could not reasonably have been expected to know if the defect in PowerBlocks until the filing of this complaint.  As described above, Defendant actively concealed the true facts about the safety and durability of PowerBlocks in materials it prepared and disseminated to Plaintiff and the Class.

43.     Defendant was and remains under a continuing duty to disclose to Plaintiff and members of the Class the true character, quality, and nature of PowerBlocks.  As a result of the active concealment by Defendant, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

**COUNT I**
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. § 501.201, *et seq.***
**(On Behalf of the Florida Subclass)**

44.     Plaintiff incorporates the above allegations by reference as though fully set forth herein.

45.     Plaintiff brings this claim individually and on behalf of a national Class of consumers who purchased Powerblocks.

46.     Plaintiff and Class members are consumers within the meaning of Fla. Stat. § 501.203(7).

47.     Defendant was engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

48.     Defendant omitted disclosure of the fact that PowerBlocks possess a defect.  This defect renders PowerBlocks dangerous and unsafe, as well as unfit for the ordinary purpose for

18

which they were sold.  Additionally, Defendant misrepresented the characteristics of PowerBlocks in claiming that they were safe, durable and of a high quality when they were not and by claiming they were merchantable when they were not.  Additionally, Defendant falsely stated that PowerBlocks were safer and more durable than alternative product options Defendant offered when those statements were flase.  This conduct constitutes unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices within the meaning of Fla. Stat. § 501.204, *et seq*.

49.     As described above, Plaintiff purchased PowerBlocks in reliance upon Defendant's false statements and omissions regarding, among other things, the safety and durability of PowerBlocks relative to other products offered by Defendant and other competitors in the marketplace.

50.     Because the PowerBlocks do not function as warranted and advertised, Defendant caused Plaintiff's injury, which can be measured and is equal to the purchase price.

51.     As a result of Defendant's misrepresentations, Plaintiff suffered actual damages within the meaning of Fla. Stat. § 501.211, because the product he purchased failed repeatedly and is not durable or safe, as Defendant expressly claimed.

**COUNT II**
**Breach of Express Warranty**
**(On Behalf of the National Class)**

52.     Plaintiff incorporates the above allegations by reference as though fully set forth herein.

53.     Plaintiff brings this claim individually and on behalf of a nationwide Class of consumers.

54.     Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other Class Members purchased PowerBlocks.  The terms of that contract include the promises and affirmations of fact made by Defendant in its advertising as well as through the lifetime warranty provided with the PowerBlocks.  The marketing and advertising of the PowerBlocks, as described and quoted above, constitutes express warranties that the PowerBlocks are safe and durable and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and the members of the Class, on the one hand, and Defendant, on the other hand.

55.     Defendant's promises create express warranties that the Powerblocks are safe, durable, and effective for normal use for their stated purpose, as well as more durable and safer than Defendant's alternative product offerings.

56.     All conditions precedent to Defendant's liability under this contract were performed by Plaintiff and the Class, when they purchased PowerBlocks and used them as directed.

57.     Despite the express warranties PowerBlocks do not meet their stated standards of quality and are not of merchantable quality.

58.     Plaintiff relied upon Defendant's express warranties to his detriment.

59.     As a result of Defendant's breach of express warranties, Plaintiff and the Class were harmed in the amount of the purchase price of the PowerBlocks.

**COUNT III**
**Violations of the Magnuson-Moss Federal Warranty Act**
**15 U.S.C. 2301, *et seq*.**
**(On Behalf of the National Class)**

60.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Class Action Complaint as if fully set forth herein.

20

61.     The PowerBlocks constitute "consumer products," as defined in 15 U.S.C. §2301.

62.     Plaintiff and the other Class members are "consumers," as defined in 15 U.S.C. §2301.

63.     Defendant is a "supplier" of the PowerBlocks as defined in 15 U.S.C. §2301.

64.     Defendant is a "warrantor" as defined in 15 U.S.C. §2301.

65.     Defendant supplied a "written warranty" regarding the PowerBlocks, as defined in 15 U.S.C. §2301(6).

66.     Defendant has expressly chosen to bind itself to the terms of its express warranty irrespective of any argument it might make concerning privity which is waived through Defendant's statements in the warranty, it's advertisements and promotional materials, as well as its conduct.

67.     Plaintiff invokes federal jurisdiction for his claims stated under this Count pursuant to the Class Action Fairness Act.

68.     Defendant violated the Magnuson-Moss Federal Warranty Act by its failure to comply with the express warranties it made to Plaintiff and other Class members. *See*, 15 U.S.C. §2301, *et seq*.

69.     Based on the facts alleged herein, including Defendant's false statements and concealment of the true facts, any durational limitation to the warranties that would otherwise bar the Magnuson-Moss Federal Warranty Act claims in this Count, is procedurally and substantively unconscionable under federal law and the applicable state common law.  Plaintiff, and the other Class members, sustained injuries and damages as a proximate result of Defendant's violation of its written warranties, and are entitled to legal and equitable relief against Defendant, including economic damages, rescission or other relief as appropriate.

**COUNT IV**
**For Unjust Enrichment Against Defendant**
**(On Behalf of the National Class)**

70.     Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

71.     As a direct and proximate result of the misconduct set forth above, Defendant has been unjustly enriched.

72.     Through deliberate misrepresentations or omissions made in connection with the advertising, marketing, promotion, and sale of PowerBlocks during the Class Period, Defendant reaped benefits, which resulted in its wrongful receipt of profits.  Accordingly, Defendant will be unjustly enriched unless ordered to disgorge those profits for the benefit of Plaintiff and the Class.  This claim is pleaded in the alternative to Plaintiff's contract-based claims.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant as follows:

A.     An order certifying the nationwide Class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and their counsel to represent the Class members;

B.     An order certifying the Florida Subclass and declaring that the acts and practices of Defendant violate the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*, and Florida warranty law;

C.     For damages pursuant to Florida law in an amount to be determined at trial, including interest;

D.     For restitution for monies wrongfully obtained and/or disgorgement of ill-gotten revenues and/or profits;

E.  A permanent injunction enjoining Defendant from continuing to harm Plaintiff and the members of the Class and continuing to violate Florida law;

F.  An order requiring Defendant to adopt and enforce a policy that requires appropriate removal of misleading claims and the inclusion of material safety information omitted from Defendant's disclosures;

G.  Reasonable attorneys' fees and the costs of the suit; and

H.  Such other relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial of his claims by jury to the extent authorized by law.

DATED:  November 8, 2017

/s/ Jon Herskowitz
**BARON & HERSKOWITZ, LLP**
Jon Herskowitz (FL Bar No. 814032)
9100 South Dadeland Boulevard
One Datran Center, Suite 1704
Miami, Florida 33156
Telephone:  (305) 670-0101
Facsimile:  (305) 670-2393
jon@bhfloridalaw.com


**CUNEO GILBERT & LADUCA, LLP**
Charles J. LaDuca (To Apply Pro Hac Vice)
William H. Anderson (Pro Hac Vice)
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20016
Telephone:  (202) 789-3960
Facsimile:  (202) 789-1813
charlesl@cuneolaw.com
wanderson@cuneolaw.com

**Counsel for Plaintiff and the Proposed Class**

23