UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:17-cv-23230-MGC-Civ-Cooke, Marcia G.

PETER COHEN, individually, and on
Behalf of all others similarly situated,

       Plaintiff,

vs.

POWERBLOCK, INC.,

       Defendant.

_____/

## DEFENDANT POWERBLOCK, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, MOTION FOR PARTIAL SUMMARY JUDGMENT AND COMBINED MEMORANDUM OF LAW

Pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(1), 12(b)(2), 12(b)(6), and 56, Defendant PowerBlock, Inc. ("PowerBlock") moves to dismiss the First Amended Class Action Complaint [ECF No. 20 (hereinafter "Am. Compl.")] with prejudice as to Counts II, III and IV and moves for partial final summary judgment on Plaintiff's claim for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Count I, for the reasons stated in the following memorandum of law. Defendant also moves for final partial summary judgment on Count IV (unjust enrichment) based upon the statute of limitations.

## I.      INTRODUCTION AND FACTUAL ALLEGATIONS

On August 25, 2017, Plaintiff filed a class action complaint. [ECF No. 1]. On October 11, 2017, PowerBlock filed a Motion to Dismiss and Motion for Partial Summary Judgment directed at that complaint.  [ECF No. 12]. Apparently recognizing the merit in PowerBlock's Motion to Dismiss, Plaintiff subsequently requested additional time to replead his complaint and filed his First Amended Class Action Complaint on November 8, 2017. [ECF No. 20]. Yet, the new Amended Complaint suffers from the same incurable flaws as the original. Unable to account for the fact that the statute of limitations bars his FDUTPA claim and that he has suffered no injury because he was offered a free

replacement of the entire set of weights under his lifetime warranty, Plaintiff simply instead adds hyperbole and legal conclusions in a last ditch effort to save his cause. [1]

On October 8, 2010, Plaintiff purchased a set of PowerBlock urethane weights from Busy Body Gyms to Go. *See* [ECF No. 13]; *see also* Am. Compl. ¶17. The urethane weights came with a limited lifetime warranty that states: [2]

> 1.    LIMITED LIFETIME WARRANTY on weights, side rails and handle assembly. If the weight plates, side rails or handle assembly **should crack or break**, it will be repaired OR replaced by Manufacturer.
>
> 2.    If the following parts are defective in material or workmanship, manufacturer will supply replacement parts: weight selector pins, other parts not listed.

*Id.* at ¶ 14 (emphasis added). Almost five years after his purchase, Plaintiff made a warranty claim because he experienced some cracking. *Id.* at ¶¶ 18, 20. The cracked weights were replaced pursuant to the warranty. *Id.* at ¶ 21. Two years later, Plaintiff made a second warranty claim because he experienced cracking on "other weights" that had been a part of the original purchase. *Id.* at ¶ 22. PowerBlock offered to replace his entire set free of charge. *Id.* at ¶ 28.

Now, despite the unambiguous language of the warranty advising of potential cracking, Plaintiff argues that PowerBlock committed a deceptive and unfair act by selling him a product without disclosing to him the weights may crack. He also claims statements such as "more durable" and "safe" were deceptive because the product could crack. *See* Am.

---

[1]    As an example, Plaintiff claims the urethane set of weights has a MSRP of $1,396.00, suggesting a substantial price premium. *See* Am. Compl. ¶ 3. *See* ECF. No. 13. The actual invoice shows he paid $379.99, $259.99, and $299.99 for the three stages of the U90 set, for a total of $938.98.    In fact, the advertised price at the time of purchase was $937.00 for the 125 pound set and $887.00 for the sport set (a $50 difference). The Sport set goes up to 130 pounds.    *See* 2010-2011 Direct Brochure attached hereto as **Exhibit A**.    *See also* https://web.archive.org/web/20100928062003/http://powerblock.com/urethane.html.

[2]    A defendant can rely upon and attach those documents to its motion that are central to plaintiff's claim that are not attached, if there is no dispute regarding their authenticity.    *See Cameron v. Scottsdale Ins. Co.*, Case No. 1:16-cv.21704, *Cooke/Torres,* 2016 WL 7387388,(S.D. Fla. 12/22/2016 ) at page 2.

Compl. ¶¶ 10, 16, 17.[3] These claims fail not only because they are belied by the actual representations given, but because they are time barred by the statute of limitations.

Plaintiff also argues that PowerBlock breached its limited lifetime warranty and the Magnuson-Moss Warranty Act despite the fact that he was offered a replacement product free of charge. He also argues the lifetime warranty is unconscionable because of its limited duration. *See* Am. Compl. ¶¶ 29 and 69. Obviously, the lifetime warranty is *per se* reasonable.

As a catch-all, Plaintiff also claims PowerBlock has been unjustly enriched from the "misconduct" alleged. Plaintiff does not explain the basis for this claim, since PowerBlock remains under an obligation to continue to repair or replace Mr. Cohen's weights under the lifetime warranty.

To top matters off, Plaintiff attempts to bring a national class action based on these claims with himself as the class representative. But, ignoring the fact that he has no claim for relief, he does not have standing to assert these nationwide claims, and this Court does not have personal jurisdiction over PowerBlock with respect to those putative class members who live in the forty-nine states other than Florida.  Plaintiff's claims must be dismissed and partial summary judgment must be entered on the FDUTPA and unjust enrichment claims as they are both clearly time barred.

## II.    LEGAL STANDARDS

To survive a motion to dismiss for failure to state a claim, a complaint must set forth enough non-conclusory allegations to show that liability for the alleged conduct is not merely possible but plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although factual allegations are assumed at this stage to be true, the court need not accept as true "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015) (internal punctuation and citations omitted).

---

[3]   The Plaintiff refers to Defendant's advertising and promotional material in 2010.  *See* Am. Compl. ¶ 16. However, Plaintiff does not quote these documents or attach them. Instead, he asserts that the representations of safety and "most durable" dumbbells were substantially identical to the brochure currently on the PowerBlock website. *See* Exhibit A and the 2010-2015 Urethane Owner's Manual, attached hereto as **Exhibit B**, containing the guarantees Plaintiff also failed to attach.

Summary judgment should be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). While the Court draws "all reasonable inferences in the light most favorable to the nonmoving party[,] . . . [s]ummary judgment must be granted if the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1294 (11th Cir. 2005) (internal citation omitted).

Courts have subject matter jurisdiction to hear only actual cases or controversies. U.S. CONST. Art. III, § 2; *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). Where a plaintiff lacks standing, a case or controversy does not exist. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013). Before considering the merits of a complaint, the court must first determine whether a plaintiff has standing to bring each individual cause of action. *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005). The plaintiff bears the burden to demonstrate the court's subject matter jurisdiction, including standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576-77 (1992).

## III.   THE COMPLAINT IS AN IMPROPER SHOTGUN PLEADING

The four-count Complaint is an improper shotgun pleading and should be dismissed in its entirety. The Eleventh Circuit "has had much to say about shotgun pleadings, none of which is favorable." *Davis v. Coca–Cola Bottling Co.*, 516 F.3d 955, 979 n. 54 (11th Cir. 2008); *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n. 9 (11th Cir.2002); *Byrne v. Nezhat*, 261 F.3d 1075, 1131 (11th Cir. 2001); *Anderson v. D. Bd. of Trs. of Central Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996). As a result, Counts II-IV of the Complaint should be dismissed in its entirety.

## IV.   THE FDUTPA CLAIM IS TIME BARRED (COUNT I)

"Statutes of limitations are vital to the welfare of society and are favored in the law" … and "they promote repose by providing security and stability to human affairs." *Wood v. Carpenter*, 101 U.S. 135, 139 (1879). "These statutes 'are designed to prevent undue delay in bringing suit on claims and to suppress fraudulent and stale claims, to the  surprise of parties . . .'" *Pierson v. Orlando Regional Health Care Systems*, No. 6:08-cv-466-Orl-28GJK 2010 WL 1408391 (M.D. Fla. April 6, 2010) at 17 (citing *Foremost Props., Inc., v. Gladman,* 100 So.2d 669, 672 (Fla. 1st DCA 1958)).  Further, such enactments will receive a liberal construction

4

in furtherance of their manifest objects and are entitled to the same respect as other statutes, and should not be explained away." Id. at 17.

FDUTPA claims have a four-year statute of limitations. *McKissack v. Swire Pacific Holdings, Inc.*, No. 09-22086-CIV, 2010 WL 3701577, *5 (S.D. Fla. Sept. 15, 2010) (citing Fla. Stat. § 95.11(3)(f)). "The statute of limitations on a FDUTPA claim expires four years from the sale of the product at issue." *Licul v. Volkswagen Grp. Of Am., Inc.*, No. 13-61686-CIV, 2013 WL 6328734, at *6 (S.D. Fla. Dec. 5, 2013); *see also Heuer v. Nissan North America, Inc.*, No. 17-60018-CIV-SCOLA, 2017 WL 3475063, *3 (S.D. Fla. Aug. 11, 2017); *Speier-Roche v. Volkswagen Group of America, Inc.*, 2014 WL 1745050, *6 (S.D. Fla. Apr. 30, 2014). The delayed discovery doctrine does not apply to FDUTPA claims. *Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc.*, 505 F. App'x 899, 905 (11th Cir.2013); *see also Davis v. Monahan*, 832 So. 2d 708, 710 (Fla. 2002) (limiting delayed discovery doctrine to only those instances the legislature has statutorily prescribed). In paragraph 42 of the Amended Complaint, Plaintiff alleges that Plaintiff "could not have reasonably discovered the true nature of the PowerBlocks until after they failed. Plaintiff's real complaint is not the alleged "fraudulent concealment," but the perceived unfairness of the legislative policy to not apply a discovery rule for any of the causes of actions alleged. The Florida Supreme Court has consistently rejected attempts to apply the "discovery rule," unless explicitly enacted by the legislature. *Davis v Monahan*, 832 So.2d 708 (Fla. 2002). Plaintiff purchased his Urethane series PowerBlocks in October 8, 2010. *See* [ECF No. 13]; *see also* Am. Compl. ¶ 17. Almost seven years later, the Complaint was filed. His claim is barred by the statute of limitations, and partial summary judgment should be entered in PowerBlock's favor.

Plaintiff builds his legal theory around the statements allegedly made by an employee of PowerBlock that the urethane weights could not tolerate the heat, and that was the reason that both sets broke. *See* Am. Compl. ¶ 24. Plaintiff also alleges that Bjorkquist told him that "the same thing" was likely to happen to a third set. *Id.* However, a fair reading of the allegations shows that Mr. Bjorkquist was asking probing questions to determine the possible causes of the cracked weights and suggested that the fact that Mr. Cohen was using the weights in his non-air conditioned garage in Miami could be a contributing cause of the 2015 and 2017 cracking of some of the weights that Mr. Cohen used. Am. Compl. ¶ 24.

The allegations cannot be twisted to support a plausible claim of a general defect or a suggestion that the weights were not merchantable under the UCC.  Further, Bjorkquist's comments completely refute the assertion that there was any policy to <u>conceal</u> a purported defect.  The allegations show an effort by Mr. Bjorkquist to determine the possible cause of broken weights that one customer had in 2015 and 2017.

Plaintiff's attempt to plead around the statute of limitations by stating that his causes of action have been tolled should be disregarded by this Court. The scant allegation that "[a]ny applicable statute(s) of limitations has been tolled by Defendant's knowing and active concealment of the facts alleged herein" (Am. Compl. ¶ 42) is insufficient under Rule 9(b). *See Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1212 (11th Cir. 2001) (finding Rule 9(b) applies to all averments of fraud); *Heuer*, 2017 WL 3475063 at *4 (finding allegations of fraudulent concealment must be stated with particularity). "Under Rule 9(b), the circumstances of the fraud must be alleged with specificity, i.e. the 'who, what, when, where, and how' of the alleged fraud." *Speier-Roche*, 2014 WL 1745050 at *7 (internal citation and quotation omitted). Plaintiff's Amended Complaint fails to comply with Rule 9(b)'s particularity requirement.

A plaintiff seeking to toll the statute of limitations as a result of fraudulent concealment must allege: (1) successful concealment of the cause of action, (2) fraudulent means to achieve that concealment, and (3) plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of his claim. *Licul*, 2013 WL 6328734 at *6; *Heuer*, 2017 WL 3475063 at *3.

"As a general rule, a plaintiff relying on the doctrine of fraudulent concealment must show affirmative actions by the defendant constituting concealment." *Hill v. Texaco, Inc.*, 825 So.2d 333, 335 (11th Cir. 1987). Allegations of inaction and nondisclosure are wholly insufficient to supply the affirmative steps taken to prevent the Plaintiff from discovering the basis of his claim that would be necessary before tolling based on fraudulent concealment becomes appropriate.  *Heuer,* 2017 WL 3475063 at *3. The "fraudulent means" alleged must go beyond nondisclosure, and constitute active and willful concealment. *Licul,* 2013 WL 6328734 at *6 (citing *Raie v. Cheminova, Inc.,* 336 F.3d 1278, 1282 n.1 (11th Cir. 2003)); *see also In re Smith,* 737 F.2d 1549, 1552 (11th Cir. 1984) ("Nondisclosure is not a continuing violation for the purposes of the statute of limitations"); *Razor Capital, LLC v. CMAX Finance*

6

*LLC*, No. 17-80388-CIV-MARRA, 2017 WL 3481761, *5 (S.D. Fla. Aug. 14, 2017) (fraudulent concealment must constitute active and willful concealment).

A plaintiff cannot rely on the same allegations of fraud that constitute their statutory violation to prove fraudulent concealment. *See, e.g., Hodo v. IndyMac Bank Home Loan Servicing,* 2009 WL 10666997, *2 (S.D. Fla. 2009). "[I]f failure to make [ ] disclosures also tolled the limitations period . . ., then the statute of limitations would be rendered meaningless because those non-disclosures are the very essence of [the violation] in the first place." *Id.* (quoting *Williams v. Saxon Mortgage Services, Inc.*, 2007 WL 2828752, at *4 (S.D. Ala. Sept. 27, 2007)). Such a rule would, as a practical matter, mean that the statute of limitations would have no specific termination point because every alleged false statement and every advertisement could be characterized as "active concealment." *See Varner v. Domestic* Corporation, C.A. No. 16-22482-Civ. Scola 2017 WL 3730618 (S.D. Fla. 02/07/2017) ("fraudulent concealment necessarily requires active conduct by a defendant, above and beyond the wrong doing upon which the plaintiff's claim is filed to prevent the plaintiff from suing") at 7.

In *Heuer*, the plaintiff filed a putative class action eight years after his purchase, claiming a violation of the FDUTPA based on an allegedly defective dashboard that would melt or crack when exposed to sunlight. 2017 WL 3475063, at *1. In dismissing the FDTUPA count based on the expiration of the statute of limitations, the district court found the plaintiff's allegations of fraudulent concealment were insufficient under Rule 9(b). *Id.* at *3. The complaint merely alleged that Nissan instructed its dealers not to replace the defective dashboards – allegations the court found did not go beyond inaction or nondisclosure even if deliberate. *Id.* The complaint also alleged Nissan gave a public statement in response to investigative reports in which Nissan stated that it had become aware of a few isolated customer complaints about the dashboard's appearance – a statement the plaintiff contended constituted fraudulent concealment because the company was downplaying the problem. *Id.* at *4. But, the court found the allegations did not satisfy Rule 9(b) because they failed to allege who made the statement, when the statement was made, and where the statement was made. *Id.* at *4.

In this case, Plaintiff only alleges that "in prior communications with Plaintiff, Defendant's representatives had concealed Defendant's actual knowledge of the defective

quality of the PowerBlocks." Am. Compl. ¶ 26. This statement alleges nothing more than nondisclosure which is insufficient to plead fraudulent concealment. *Heuer,* 2017 WL 3475063 at *3; *Licul,* 2013 WL 6328734 at *6.

Plaintiff purchased his weights from a local retailer on October 8, 2010. ECF. No. 13. The four (4) year FDUTPA statute of limitations ran on October 7, 2014, and the claim was extinguished at that date. Yet, the only "communication" between PowerBlock and Mr. Cohen was whatever marketing material he reviewed. The next contact was 4 years and almost 7 months later, when Plaintiff made his first warranty claim in July 2015. *See* Am. Compl. ¶10. Since Plaintiff must prove that the actual concealment was successful, an avoidance theory is inapplicable. *A.P. et rel. Ferer v. GlaxoSmithKline, LLC* [No. 13-23246-civ-2014 WL 3928522 (S.D. Fla. Aug. 12, 2014)] (Goodman Magistrate Judge) (plaintiff must provide successful concealment and defendant used fraudulent means to achieve concealment). *See* Am. Compl. ¶¶ 20-21. Despite the fact that at this point in time Plaintiff's claim is already time barred, Plaintiff alleges that the unspecified representations made in 2015 were consistent with the representations that were made in PowerBlock's advertising. *See* Am. Comp. ¶ 21. *See* Defendant's advertising brochure published in 2010 and used from 2010 to 2011 attached hereto as **Exhibit A**. The brochure's primary focus is on the health advantages of free weights, descriptions of products and pricing, and an emphasis on the advantages of adjustable systems to avoid the expense and space requirement of traditional dumbbells. The word "durable" appears once: "smoothest, quietist, and most durable Powerblock weights." **Exhibit A, pg. PBK000231**. The word "safe" does <u>not</u> appear at all in the 2010 – 2011 brochure.

There is no allegation of Plaintiff reviewing advertisements or marketing materials or relying on any such materials at all except prior to the Oct. 8, 2010 purchase. *See* Am. Compl. ¶¶ 16 & 17. Mr. Cohen claims that he recalls the representations he read seven years ago, and he points to the 2017 website to inaccurately allege that the representations were the same in 2010. He claims that PowerBlock promised that the weights "can't be beat for safety" and that urethane power blocks "were the most durable power blocks ever." *See* Am. Compl. ¶ 21. The Amended Complaint alleges that "these assertions were substantially identical to the brochure reviewed by Plaintiff pre-purchase." *See* Am. Compl. ¶ 21.

The first warranty claim in June 2015 was after the statute of limitations had already run.  Any representation, communication, or act after October 7, 2014 (4 years after the purchase) is entirely irrelevant to the issue of fraudulent concealment because such actions could not have prevented Plaintiff from filing a timely complaint since the statute had already run.  *Majdipour v. Jaguar Land Rover North America, LLC*, No.  12-07849 (WHW)(CLW), 2015 WL 1270958. *5 (D.N.J. Mar. 18, 2015) (holding plaintiff's FDUTPA claim was time barred and fraudulent concealment avoidance failed because alleged illusory repairs to hide defects fails because plaintiff does not allege that he received repairs during the statute of limitations period) (applying Florida law).

Additionally, Plaintiff complains about a non-disclosure, not an affirmative statement, because he alleges that no one "indicated" during the 2015 conversation that the cracking was "anything but an anomaly."  *Id.* at ¶ 21.  The purported fraudulent concealment must be intentional and done with the purpose of preventing the plaintiff from discovering the violation of his rights.  This follows from the purpose of the equitable avoidance to prevent a defendant from benefiting from its own misconduct that precludes a plaintiff from filing by affirmatively concealing evidence of the wrong.  *See Licul,* 2013 WL 6328734 at *6; *Razor Capital, LLC.* 2017 WL 3481761; *Vargas by and through Vargas v. Glades General Hosp.*, 566 So.2d 282, 285 (Fla. 4th DCA 1990).

If the defendant was unaware of the alleged defect, there can be no intentional concealment. The fact that the company offered a lifetime warranty for its urethane products is also consistent with the belief by PowerBlock of the durability of its products. Additionally, the urethane product was a new product in 2010, and the company had just started to sell its fourth generation product.  **Exhibit A, pg.  PBK 000229.**  The only "support" for the claim of knowledge was a complaint in January 2017 from Singapore.  *See* Am. Compl. ¶ 31 and the July 2017 Warranty Claim.

Defendant also asserts a safety risk associated with using the weights if they crack, claiming that Defendant is "under a continuing duty to disclose to Plaintiff and members of the class, the true character quality and nature of PowerBlocks."  *See* Am. Compl. ¶ 43. There is no question that weights may crack—the PowerBlock warranty explicitly excludes dropping weights from more than 12 inches, while the steel Sport Series 9.0 set, excludes

coverage on weights dropped from more than 6 inches.  *See* Page 11 of the 2010 Sport Series Owner's Manual attached hereto as **Exhibit C.**

The Defendant warns consumers not to use cracked weights in the warranty.  The 2010 Owner's Manual instructed purchasers to "inspect equipment before each use for loose or worn parts (including bolts).  Replace worn parts at first sign of wear." **Exhibit B, pg. PBK 000182**.  The Owner's Manual also instructed purchasers to "inspect the dumbbells prior to use. **Exhibit B, pg. PBK 000178**.  The Amended Complaint includes no reference to anyone ever suffering a serious injury due to the use of the weights.

There is absolutely no attempt in the Amended Complaint to allege any conduct on the part of PowerBlock which would constitute fraudulent concealment or allow the inference  that the company had knowledge of the purported defect in 2010 or at any time prior to October 7, 2014.  The July 2015 warranty claim makes no reference to any communication except by email and the allegations of paragraphs 21, 26 and 27 fail to meet the 9(b) requirements of specificity.  *Marlborough Holdings Group, Ltd.*, 505 F. App'x at 906-907 (11th Cir. 2013) (finding FDUTPA claim time barred and unsupported speculation and conclusions insufficient to defeat summary judgment.) Because Plaintiff's FDUTPA claim is time barred, partial summary judgment must be entered in Defendant's favor on Count I.[4]

## V.    THERE IS NO DECEPTIVE CONDUCT OR INJURY ALLEGED

Plaintiff's claim is time barred and partial summary judgment must be entered in Powerblock's favor. Ignoring that fact, the FDUTPA count should be dismissed because it fails to state a claim for relief. The alleged "deceptive" representations are not likely to mislead and the purported omission was actually disclosed.

A consumer claim under FDTUPA has three elements: (1) a deceptive act or practice; (2) causation; and (3) actual damages. *Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015). "[D]eception occurs if there is a

---

[4]  Rule 56(b) expressly states that "unless a different time is set by local rule or the court orders otherwise, a party may file a Motion for Summary Judgment at any time until thirty (30) days after the close of discovery."  Courts are authorized to grant motions to dismiss if the statute of limitations bars the claim on the face of the pleading. *Jacobs v. Estefan*, No. 16-15732, 2017 WL 3381850, *1 (11th Cir. Aug. 2, 2017) Because the Court can grant a motion to dismiss with prejudice on the statute of limitations defense, a summary judgment motion at the pleading stage is appropriate.

representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003).   In this case, the challenged conduct was not likely to mislead a consumer acting reasonably because the express terms of the warranty, brochure, and website quoted in the Amended Complaint undermine Plaintiff's claim. *See, e.g. Zlotnick v. Premier Sales Group, Inc.*, 480 F. 3d 1281, 1285 (11th Cir. 2007) (affirming dismissal and finding express terms of reservation agreement rebutted FDTUPA claim).

Adding to his original complaint, Plaintiff now identifies the materials and representations he supposedly relied upon in deciding to purchase his PowerBlock. *See* Am. Compl. ¶¶ 16, 17.   Plaintiff's assertions that the claims he relied upon are substantively identical to the claims made on the current website should be disregarded as lacking sufficient specificity and because they are directly contradicted by the documents that he allegedly relied upon.   The words "safety" and "test" do not appear in the 2010-2011 brochure attached as Exhibit A, and the word "durable" appears only once.   The problem is, the allegedly deceptive "misrepresentations" are plucked from various sources and quoted completely out of context. When read as a whole, it is clear that a reasonable consumer was not likely to be misled by the terms "safe" or "durable".

The second representation that forms the basis of Plaintiff's FDUTPA claim is a statement regarding "durability."   Yet again, when read in context, it is clear that there was no representation that was likely to mislead a reasonable consumer. As Plaintiff himself quotes, PowerBlock explained what it meant by improved durability over the steel models by stating:

> The reasons for the improved durability over the welded steel models is the ability of the weight plates and selector pins to "flex" and absorb energy. We also feel as though the enhanced appearance of the product not only makes it more durable, but the most eye appealing as well. It is also the quietest dumbbells we offer with the steel plates being Urethane coated and thus no metal on metal contact. The Urethane coating also has a self lubricating quality to it making the plates slide in and out smoother than painted metal weight plates.

*See* Am. Compl. ¶ 13.   There is no allegation that Plaintiff's PowerBlocks did not meet this definition. The only allegation is that the alleged "misrepresentations" were false

11

because his PowerBlocks cracked, which is expressly warned about in the warranty. *See* Am. Compl. ¶ 14. In fact, Plaintiff's warranty claim is based upon a July 2015 claim when he had the weights for over 4 years and a June 2017 claim when different weights cracked 6 years and 8 months after purchase. See ¶¶ 17-23 Am. Compl.

Additionally, the terms "durable" and "safe" are puffing. These are statements about how the product will perform in the future, which is not a statement of present fact, but an opinion regarding future performance. *Stone Creek-AAA, LLC v. Wells Fargo Bank, N.A.*, No. 1:12-cv-23850-MGC/Turnoff , 2013 WL 5416970 (S.D. Fla. Sept. 26, 2013). ("Under Florida law, to constitute actionable fraud, a false representation must relate to an existing or pre-existing fact.) It is classic salesman talk that has no objective criteria to measure, and does not specify what attribute of "durability" is referred to in the context of the advertisement or the "warm environments" that the product does" not perform well." ¶4 Am. Compl. There is no evidence of a durability claim related to "heat," and the only interpretation to the capacity to flex and absorb energy. *See* Am. Compl. ¶ 13. *Tatum v. Chrysler Group, LLC*, No. 10-cv-4269 (DMC) (JAD), 2011 WL 1253847, *4 (D. N.J. Mar. 28, 2011) (durability claim is puffing and plaintiff cannot rely upon opinion because to the "extent that any warranty of reliability and durability could be teased from the advertising, durability and reliability may be based upon multiple factors, not just one element of the car albeit a vitally important one [brakes].").

In any event, all of the identified claims are non-actionable puffing. *Bennett CMH Homes, Inc.*, 662 F. App'x 329, 337 (6th Cir. 2016) (comparative claim that mobile home was more "durable" than a conventional home was puffing as a matter of law; *Vitt v. Apple Computer, Inc.*, 469 F. App'x 605, 607 (9th Cir. 2017) (claims that computer was durable and rugged were general non-actionable puffery); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061 (9th Cir. 2001) (cruise line promising customers would be "safely and adequately served" was puffing); *Paws Holdings, LLC v. Daiken Industries, Ltd.*, No. CV-116-058, 2017 WL 706624, *15 n.25 (S.D. Ga. Feb. 22, 2012) (claims regarding future low maintenance were puffing.); *Azoulai v. BMW of North America, LLC,* No. 16-cv-00589-BLF, 2017 WL 1354781, *8 (N.D. Cal. Apr. 13, 2017) ("to be actionable, a statement must be 'specific and measurable' and capable of being proven true or false" and holding "safely" was puffing).

With regard to the "safety" claim, in the brochure cited to by Plaintiff, the word "safety" is stated in context of discussing the use of free weights in general. *See* Am. Compl. ¶ 16; *see* 2017 Direct Brochure, attached hereto as **Exhibit D**. Specifically, the word "safety" is mentioned only once in the entire brochure where it is stated:  "Free weights, specifically dumbbells, barbells and kettlebells, used in controlled, slow movements, cannot be beat for effectiveness, safety, building strength, balance, coordination, and symmetry." Plaintiff's characterization that this statement was deceptive because his weights cracked is not plausible on its face. The 2010-2015 Owner's Manual provides clear and conspicuous warnings that users should not use weights that are damaged.  **Exhibit B.**  The Plaintiff fails to identify anyone in the U.S. who has suffered any injury, nor has he alleged what conditions amount to a "hot" environment that would constitute a breach.

Plaintiff claims he purchased his PowerBlock weights in reliance upon affirmations regarding safety and durability, as well as the lifetime warranty provided with his PowerBlocks. *See* Am. Comp. ¶ 17. Starting with the warranty, it expressly states that should the product "crack or break" it will be repaired or replaced by PowerBlock. *Id.* at ¶ 14. This affirmative disclosure, which Plaintiff saw and relied upon, undermines Plaintiff's claim in this case that he would not have purchased the product had he known it was capable of breaking despite the lifetime warranty. *See* Am. Compl. ¶ 27.

In *Zlotnick,* the plaintiff signed a reservation agreement for a unit in a condominium complex to be built. 480 F. 3d at 1283. The seller terminated the reservation agreement and sent a second letter informing the plaintiff he could purchase the unit at a higher price. *Id.* The plaintiff filed a class action complaint under the FDUTPA, alleging the seller deceptively solicited reservation agreements to secure financing and then terminated those agreements with the sole purpose of reaping the benefits of a rising real estate market. *Id.* at 1284.  The district court granted the seller's motion to dismiss, which was affirmed by the Eleventh Circuit. Using the actual language of the reservation agreement, which stated that the seller had the ability to cancel the agreement for any reason and that the agreement did not guarantee any purchase contract, the Eleventh Circuit found that no reasonable purchaser would believe that a void reservation agreement established a binding purchase price when it was merely an "agreement to agree." *Id.* at 1287.

13

Like in *Zlotnick*, in this case there is an express statement in the warranty that the product may crack or break, which undermines Plaintiff's theory regarding deceptive conduct. There are also statements that using free weights in general provide a good workout and that the urethane models are more durable than steel because of the flexibility of the weight plates and selector pins. Neither of these statements, on their face or viewed with the express disclosure in the warranty, are likely to mislead a reasonable consumer into believing that their product will never crack. Finally, it is undisputed that Defendant offered to replace the Plaintiff's weights.  Therefore, Plaintiff has suffered no injury and has failed to state a cause of action under FDUTPA.  *Reilly v Chipotle Mexican Grill, Inc., --- Fed.Appx. --- No. 16-17461, 2017 Westlaw, 4410952 (11th Cir. Oct. 4, 2017)* (actual damages required to sustain FDUTPA claim) at p.4.  As a result, Count I of Plaintiff's Amended Complaint fails to state a claim for violation of the FDUTPA and must be dismissed.

## VI.    THERE IS NO BREACH ALLEGED IN PLAINTIFF'S WARRANTY COUNT (COUNT II)

To assert a cause of action for breach of express warranty under Florida law, a consumer must allege that the manufacturer did not comply with the limited express warranty's terms. *Brisson v. Ford Motor Co.,* 5602 F. Supp. 2d 1227 (M.D. Fla. 2009), *dismissal aff'd by* 349 F. App'x 433 (11th Cir. 2009). The consumer must allege that the manufacturer refused or failed to adequately repair or replace a covered item. *Id.; see also Bailey v. Monaco Coach Corp.*, 168 F. App'x 893, 894 (11th Cir. 2006) (affirming summary judgment of on breach of warranty claim because there was no evidence that the defendant failed to repair any defect that was brought to its attention within the terms of the express warranty).

The warranty at issue provides

1.     LIMITED LIFETIME WARRANTY on weights, side rails and handle assembly. If the weight plates, side rails or handle assembly should crack or break, it will be repaired OR replaced by Manufacturer.

2.     If the following parts are defective in material or workmanship, manufacturer will supply replacement parts: weight selector pins, other parts not listed.

Am. Compl. ¶ 14.

14

It is undisputed that PowerBlock offered to provide a full replacement of the product under the warranty. *Id.* at ¶ 28. Thus, there has been no breach based on the four-corners of the Complaint and Plaintiff's claim for breach of express warranty must be dismissed. *See Wilson v. Chattem, Inc.*, No. 09-80681-CIV-DIMITROULEAS, 2009 WL 10667847 (S.D. Fla. Sept. 17, 2009) (dismissing breach of warranty claim under Rule 8(a)(2) finding claims did not rise to the level of "facial plausibility" but instead were mere "threadbare recitals of a cause of action's elements, supported by mere conclusory statements") (quoting *Iqbal*, 556 U.S. at 677)); s*ee also Orkin Exterminating Co., Inc. v. Delguidice*, 790 So. 2d 1158, 1162 (Fla. 5th DCA 2001) (retreatment and repair warranty was a liquidated damage provision bars a claim for actual damages if supplier adhered to the warranty).

Plaintiff also claims that "promises and affirmations of fact made by Defendant in its advertising as well as through the lifetime warranty provided . . . constitutes express warranties." *See* Am. Compl. ¶ 54. But, to the extent Plaintiff's breach of warranty claim is based on an affirmation that he saw before purchase rather than the actual limited lifetime warranty, his breach of warranty claim is time barred. An action based on a breach of written warranty must commence within five years of when the cause of action accrued. Fla. Stat. § 95.11(2)(b). Under Florida law, it is "well established" that the statute of limitations for a breach of contract action "runs from the time of the breach, although no damage occurs until later." *Medical Jet, S.A. v. Signature Flight Support-Palm Beach, Inc.*, 941 So. 2d 576, 578 (Fla. 4th DCA 2006). This is because at least nominal damages are sustained at the time of the breach, making all of the elements of a breach of contract claim present at the time of the breach. *Id.* Further, the delayed discovery doctrine does not apply. *See Federal Insurance Co. v. Southwest Florida Retirement Center*, 707 So.2d 1119, 1122 (Fla. 1998) (rejecting delayed discovery rule for breach of contract claims); *Davis,* 832 So. 2d at 710; *Potiker v. Gasiunasen Gallery,* No. 09-82356-CIV, 2010 WL 2949943, *3 (S.D. Fla. July 26, 2010) (finding delayed discovery doctrine does not apply to warranty claims).

In this case, PowerBlock honored its obligations under the warranty. Nevertheless, Plaintiff brings a claim for breach of warranty based on unknown affirmations. To the extent Plaintiff's breach of warranty claim is based on unconscionability or something other

than the warranty, his claim is time barred because he purchased his product in the Fall of 2010, well over five years before the filing of this action. *See Potiker,* 2010 WL 2949943 at *3.

"By offering a warranty, a manufacturer recognizes that items, even those found in a new product, may sometimes fail. However, a warranty itself is not breached simply because a defect occurs." *Johnson v. Thor Motor Coach, Inc.*, No. 5:15-CV-85-Oc-PRL, 2016 WL 8939134, *3 (M.D. Fla. Aug. 1, 2016). Plaintiff's breach of warranty claim must be dismissed.

## VII.   PLAINTIFF'S MAGNUSON-MOSS CLAIM MUST BE DISMISSED (COUNT III)

The Magnuson-Moss Warranty Act creates a federal cause of action for breach of written and implied warranties under state law. See 15 U.S.C. § 2310(d)(1). The ability to sustain a cause of action under the Magnuson-Moss Warranty Act is dependent on the existence of an underlying viable breach of state warranty law claim. *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1266 (N.D. Fla. 2012); *Licul,* 2013 WL 6328734 at *4.

As explained above, Plaintiff cannot maintain his breach of express warranty claim under Florida law. Thus, Plaintiff's Magnuson-Moss claim fails.[5]

## VIII.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM MUST BE DISMISSED (COUNT IV)

Unjust enrichment is an equitable doctrine. The doctrine applies only where (1) the plaintiff conferred a benefit on the defendant, who had knowledge of the benefit; (2) the defendant voluntarily accepted and retained the benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it. *Nichols v. Wm. Wrigley Jr. Co,* No. 10-80759-CIV, 2011 WL 181458, *5 (S.D. Fla. Jan. 19, 2011).

---

[5] The Magnuson-Moss Act contains no express statute of limitations. District courts must look to the most analogous state statute to determine which statute of limitations to apply. *Speier-Roche*, 2014 WL 1745050 at *5. In deciding which state statute of limitations is most analogous and should apply to the Act, courts have considered state Lemon Laws, and the limitations period governing warranty claims under a state's commercial code. *Id.* (citing *Saavedra v. Albin Mfg, Corp.,* No. 8:11-CV-1893-T-33TBM, 2012 WL 254122, *3 (M.D. Fla. Jan. 27, 2012). A breach of warranty claim has a five year limitations period and Florida's Lemon Law has a three-year statute of limitations. *See* Fla. Stat. § 95.11(2)(b); § 681.102.

An unjust enrichment claim should be dismissed when a plaintiff has an adequate remedy. *Id. at* *5 (citing *Prohias v. Pfizer, Inc.,* 490 F. Supp. 2d 1228, 1236 (S.D. Fla. 2007); *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1120, 1178 (M.D. Fla. 2005).  However, if Defendant is not liable under those theories, then Plaintiff cannot prevail on his unjust enrichment claim. *See Nichols,* 2011 WL 181458 at *5.

Further, it is not clear what exactly is inequitable about the factual allegations. Plaintiff conclusorily states that "[a]s a direct and proximate result of the misconduct set forth above, Defendant has been unjustly enriched." *See* Am. Compl. ¶ 71. But Plaintiff fails to describe exactly what the misconduct or unjust enrichment is, considering Defendant offered to replace the product under the warranty free of charge.  The warranty did not promise that there were no defects.  Instead, it promised to repair and replace any defective.

Finally, as with Plaintiff's other claims, his unjust enrichment claim is time barred because such a claim is subject to a four-year statute of limitations and the delayed discovery doctrine does not apply. *Brown v. Nations Credit Financial Services Corp.*, 32 So. 3d 661, 662 n.1 (Fla. 1st DCA 2010); *Davis*, 832 So. 2d at 709.

## IX.   THE COURT LACKS PERSONAL JURISDICTION OVER THE NATIONWIDE CLASS

Plaintiff Peter Cohen is a Florida resident seeking to represent a nationwide class. *See* Am. Compl. ¶ 10. The purported nationwide class of purchasers presumably reside in and purchased their product in the other 49 states. Under Supreme Court precedent, this Court cannot exercise personal jurisdiction over PowerBlock related to claims that have no connection to Florida. These claims should be dismissed under Rule 12(b)(2).

Consistent with the limitations imposed by federal due process, Florida's long-arm statute recognizes two types of personal jurisdiction: general and specific. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (considering Fla. Stat. § 48.193). General jurisdiction allows a federal court to exercise "jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida." *Id.* The reach of the long-arm statute's general-jurisdiction provision "extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). Specific jurisdiction, by contrast, allows a court

to hear only those claims that "arise out of or relate to a defendant's contacts with Florida." *Carmouche*, 789 F.3d at 1204.

### A.     PowerBlock Is Not Subject to General Jurisdiction in Florida

Recent Supreme Court precedent makes plain that this court lacks general jurisdiction over PowerBlock. *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). According to *Daimler*, a corporation is subject to general jurisdiction only where its "affiliations with the state are so 'continuous and systematic' as to render [it] essentially at home in the forum state." 134 S. Ct. at 761 (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915 (2011)). *Daimler* explains that the paradigmatic forums for general jurisdiction are a corporation's state of incorporation and the state in which it maintains its principal place of business. *Id. Daimler* makes clear that it would take an "exceptional case" for a corporation to be "essentially at home"—and therefore subject to general jurisdiction—in a forum other than its place of incorporation or principal place of business. *Id.* at 760, 761 n.19.

PowerBlock is a Minnesota corporation with its principal place of business in Minnesota. *See* Am. Compl. ¶ 11. None of PowerBlock's activities in Florida "closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche*, 789 F.3d at 1205. The only Florida connections alleged in the Complaint is that PowerBlock "sells dumbbell systems through various distribution channels throughout the United States, including in Florida. Defendant purposefully avails itself of the Florida consumer market, distributing, disseminating, and advertising in Florida." *See* Am. Compl. ¶ 8. None of these connections—alone or cumulatively—is sufficient to confer general jurisdiction.

Merely doing business in the forum state—even a substantial amount of business—is insufficient. In *Daimler*, the Supreme Court held that evidence of "sizable" sales of Mercedes-Benz vehicles in California—accounting for 10 percent of all new sales in the United States, and 2.4 percent of worldwide sales—" were insufficient to establish the personal jurisdiction over the parent corporation *Daimler*, 134 S.Ct. at 752, 761–62.[6]

---

[6] *See also Erwin v. Ford Motor Co.*, No. 8:16-CV-01322-T-24 AEP, 2016 WL 7655398, at *11 (M.D. Fla. Aug. 31, 2016); *Recao v. Bell Helicopter Textron, Inc.*, No. 14-60202-CIV-ZLOCH, 2014 WL 12595302, *4 (S.D. Fla. Sept. 23, 2014).

### B.   PowerBlock Is Not Subject to Specific Jurisdiction in Florida for Claims of Non-Florida Residents

As it relates to specific jurisdiction, Florida's long-arm statute states that a corporation who "does any of [certain specified] acts . . . submits [itself] to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts." Fla. Stat. § 48.193(1)(a). Plaintiff alleges this Court has personal jurisdiction because PowerBlock advertises, sells and distributes its products in the Florida *See* Am. Compl. ¶ 8.

But Plaintiff cannot identify any fact to support invoking Florida's long-arm statute with respect to claims of the putative class members who are not Florida residents and did not purchase their dumbbell product in Florida. Specifically, Plaintiff cannot show that the claims of the non-Florida residents arise from the fact that PowerBlock does some business in Florida or placed the subject PowerBlock product into the stream of commerce within the districts of Florida.

Nor does the Complaint allege that these non-Florida claims are related to any "tortious activity" in Florida. To exercise specific jurisdiction over PowerBlock related to alleged "tortious activity" in Florida, "[P]laintiff must demonstrate that the non-resident defendant committed a substantial aspect of the alleged tort in Florida by establishing that the activities in Florida were essential to the success of the tort." *Cable/Home Comm. Corp. v. Network Prods., Inc.*, 902 F.2d 829, 857 (11th Cir. 1990). Courts in this district have rejected the exercise of specific jurisdiction where a plaintiff only generically contends that the defendants engage in tortious conduct, but does not identify "where any of that conduct occurred." *Hudson Glob. Res. Mgmt., Inc. v. Beck*, No. 805CV1446T27TBM, 2006 WL 1722352, at *3 (M.D. Fla. June 20, 2006); *Plantation Botanicals, Inc. v. Euromed USA, Inc.*, No. 2:06-CV-103-FTM-99SP, 2006 WL 2382464, at *2 (M.D. Fla. Aug. 17, 2006) (dismissing complaint because "there are no factual allegations concerning where defendant was when he made the [tortious] statements"). These are precisely the circumstances here.

Because Plaintiff has not alleged facts that would allow nonresident class members to benefit from the Florida long-arm statute, this Court lacks personal jurisdiction over PowerBlock as to the non-Florida residents' claims and need not even inquire whether the due process clause of the United States Constitution permits the statute to be employed in this case. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Nevertheless, recent

19

Supreme Court precedent further illustrates the Constitutional restrictions on the Court's exercise of specific personal jurisdiction over PowerBlock in this case. *See Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773 (2017).

As the Supreme Court made clear in *Bristol-Myers*, even with specific jurisdiction, the due process clause requires "an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *See id.* at 1780 (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Absent this connection, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

In *Bristol-Myers*, the Court refused to allow the exercise of specific jurisdiction over a non-resident defendant as to claims asserted by non-resident plaintiffs merely because residents of the forum state could assert similar or virtually identical claims against the same defendant. *Id.* The Court explained, "[t]he mere fact that *other* plaintiffs [experienced the same conduct complained of] in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1781 (emphasis in original). While *Bristol-Myers* was not a class action, the same principle applies in this case. The fact that this Court may exercise personal jurisdiction over the claims of Plaintiff Cohen – because he is a Florida resident – or the claims of the Florida-based class is not to establish  personal jurisdiction over PowerBlock with respect to other claims that have no connection to Florida.

Recognizing that efficiency compels a contrary result, the U.S. Supreme Court nonetheless found that those interests cannot overcome the federalism concerns served by enforcing specific jurisdiction requirements:

> [e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*Id.* at 1780-81 (internal quotation omitted). "[R]estrictions on personal jurisdiction are more than a guarantee of immunity from inconvenient or distant litigation. They are a

20

consequence of territorial limitations on the power of the respective States." *Id.* at 1780 (internal quotes omitted).  The rationale of *Bristol-Myers* is that there are constitutional limits that restrict taking full advantage of administrative efficiencies in mass tort cases.  Those constitutional principles also limit the ability of plaintiff's counsel to cherry-pick the forum and leverage that advantage a thousand-fold in a class action where the residents have no connection to the forum This Court should therefore dismiss the claims of the nationwide class.

### X.   PLAINTIFF LACKS ARTICLE III STANDING TO ASSERT CLAIMS ON BEHALF OF A NATIONWIDE CLASS

Ignoring the fact that this Court does not have personal jurisdiction over the putative nationwide class, Plaintiff lacks standing to assert "nationwide" breach of express warranty (Count II), Magnuson-Moss (Count III), or Unjust Enrichment (Count IV) claims because Plaintiff has not suffered "nationwide" injuries that can be redressed through these counts. These claims are all based on the application of separate state laws with no application to Plaintiff's claims or alleged injuries; thus, Plaintiff lacks standing to assert these "nationwide" claims. *See Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim" ). Under clear precedent in this Court, "[a] named plaintiff lacks standing to assert legal claims on behalf of a putative class pursuant to state law under which the named plaintiff's own claims do not arise." *In re Takata Airbag Prods. Liability Litig.*, 2016 WL 1266609, at *4 (S.D. Fla. Mar. 11, 2016) (internal citation omitted); *see also In re Teazosin*, 160 F. Supp. 2d at 1370-71 ("[T]he named plaintiffs cannot rely on unidentified persons within those states to state a claim for relief"); *In re Checking*, 694 F. Supp. 2d at 1324 (same); *see also Sanchez-Knutson v. Ford Motor Co.*, No. 14-61344-CIV-DIMITROULEAS, 2015 WL 11197772, at *2 (S.D. Fla. July 22, 2015) (dismissing nationwide Magnuson-Moss claim); *In re Ford Tailgate Litig.*, 11-CV-2953-RS, 2014 WL 1007066, *5 (N.D. Cal. Mar. 12, 2014) (dismissing putative "nationwide" Magnuson-Moss claims in the absence of a named plaintiff asserting a breach of warranty under those state's laws); *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.,* 880 F. Supp. 2d 801, 819 (S.D. Ohio 2012) (same); *In re Graphics Processing Units Antitrust Litig.,* 527 F. Supp. 2d 1011, 1026 (N.D. Cal. 2007) (dismissing state

21

law claims in putative class action because no named plaintiff resided in those states); *Granfield v. NVIDIA Corp.,* C 11-05403 JW, 2012 WL 2847575, at *4 (N.D. Cal. July 11, 2012) (dismissing all non-Massachusetts state law warranty claims with prejudice); *Suarez v. Playtex Prods., Inc.*, 08-C-2703, 2009 WL 2212315, at *2 (N.D. Ill. July 24, 2009) (dismissing claims for jurisdictions where plaintiffs did not live); *Cornelius v. Fidelity Nat'l Title Co.*, C08-754MJP, 2009 WL 596585, at *9-10 (W.D. Wash. Mar. 9, 2009) (no basis for claims under out-of-state laws; lacking standing, claims dismissed); *McGuire v. BMW of N. Am.*, *LLC,* CIV.A. 13-7356 JLL, 2014 WL 2566132, at *6-7 (D.N.J. June 6, 2014) ("[T]his Court agrees that the Plaintiff here lacks standing to assert claims under the laws of the states in which he does not reside, or in which he suffered no injury); *Xi Chen Lauren v. PNC Bank, N.A.,* 296 F.R.D. 389, 391 (W.D. Pa. 2014) ("[Plaintiff] suffered an alleged injury exclusively under Ohio law. Therefore she does not have standing to assert unjust enrichment claims under the law(s) of any other state"); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) ("[N]amed plaintiffs lack standing to assert claims under the laws of states in which they do not reside or in which they suffered no injury"); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 758 (E.D. Pa. 2014) (same).

## XI.   PLAINTIFF LACKS ARTICLE III STANDING

Plaintiff has not properly alleged any injury-in-fact under Article III of the U.S. Constitution for any claim because PowerBlock offered to replace his set of weights free of charge under the warranty. Am. Compl. ¶ 28. Threadbare assertions that he paid more than he otherwise would have paid are insufficient to confer standing. *See Hubert v. General Nutrition Corp.*, No. 2:15-cv-01391, 2017 WL 3971912 (W.D. Pa. Sept. 8, 2017); *Irvine v. Kate Spade and Co.*, No. 16-CV-7300 (JMF), 2017 WL 4326538, *4 (S.D.N.Y. Sept 28, 2017).

In addition, Plaintiff, in his "Prayer for Relief" seeks a "permanent injunction" enjoining the Defendant from continuing to harm him as well as the members of the putative class. *See* Am. Compl., Prayer for Relief, ¶ E. Yet, it is unclear under what theory Plaintiff seeks this injunction as he has not requested an injunction under any count of the Complaint. Nevertheless, Plaintiff's injunction claim must be dismissed because Article III of the U.S. Constitution requires that a plaintiff seeking injunctive relief allege a threat of future harm. *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015). Here,

Plaintiff fails to sufficiently allege a threat of future harm.  In fact, since Plaintiff and all purchasers have a lifetime warranty, any future injury would be entirely speculative. The injunction claim is also barred by the applicable statute of limitations. *See supra.*

## XII.   PLAINTIFF LACKS ARTICLE III STANDING FOR PRODUCTS HE DID NOT PURCHASE

Under the law of the Eleventh Circuit, "at least one named plaintiff must establish Article III standing for each class subclaim. In other words, Article III standing of a named plaintiff must be established on a claim-by-claim basis within the Eleventh Circuit, and deferring the standing determination to the class-certification stage will yield no different result." *Toback v. GNC Holdings, Inc.*, No. 13–80526–CIV, 2013 WL 5206103, at *4 (S.D.Fla. Sept. 13, 2013) (citing *Prado–Steiman v. Bush*, 221 F.3d 1266, 1279–80 (11th Cir.2000) (internal citations omitted)); *see also Dapeer*, 95 F. Supp. 3d at 1373 (finding the named plaintiff in a consumer class action lacked standing to challenge a non-purchased product because there was no injury-in-fact as to that product, even if he purchased a substantially similar product).  Here, Plaintiff lacks Article III standing to bring claims on behalf of PowerBlock products he did not purchase. Therefore, the class definition should be limited to purchasers of the product purchased by Plaintiff (PowerBlock Urethane Series U90, Am. Compl. ¶ 17) and the remaining putative class claims should be dismissed.

## XIII.   CONCLUSION

Plaintiff's Amended Complaint must be dismissed and partial summary judgment must be entered on Plaintiff's FDUTPA and unjust enrichment claims. Plaintiff purchased his product well over the applicable statute of limitations and he has not plausibly alleged an entitlement to relief.

WHEREFORE, Defendant, PowerBlock, Inc. respectfully requests this Court dismiss Counts II-IV of Plaintiff's Amended Complaint with prejudice and award costs and any other relief the court might find appropriate and grant partial summary judgment in PowerBlock's favor on the claim for violation of Florida's Deceptive and Unfair Trade Practices Act (Count I), and award PowerBlock its fees and costs under Florida Statute Sections 501.211(1) and (2) and 501.2105 after entry of a final judgment.

Respectfully submitted,

s/  *Douglas B. Brown*

**DOUGLAS B. BROWN**
Florida Bar No. 0242527
dbrown@rumberger.com
dbrownsecy@rumberger.com
**E. H. EUBANKS, JR.**
Florida Bar No.: 0612091
seubanks@rumbeger.com
seubankssecy@rumberger.com
**SAMANTHA C. DUKE**
Florida Bar No.: 0091403
sduke@rumberger.com
sdukesecy@rumberger.com
**RUMBERGER, KIRK & CALDWELL, P.A.**
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133

**SCOTT M. SARASON**
Florida Bar No.:  0394718
ssarason@rumberger.com (Primary)
docketingorlando@rumberger.com and
ssarasonsecy@rumberger.com (secondary)
**RUMBERGER, KIRK & CALDWELL, P.A.**
Brickell City Tower
80 S.W. 8th Street
Suite 300
Miami, FL 33130-3037
Telephone:  (305) 358-5577
Telecopier: (305) 371-7580

*Attorneys for Defendant*

24

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this 22nd day of November, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to:  See attached Service List.

s/  *Douglas B. Brown*

**DOUGLAS B. BROWN**
Florida Bar No. 0242527
dbrown@rumberger.com  (Primary)
dbrownsecy@rumberger.com (Secondary)
**E. H. EUBANKS, JR.**
Florida Bar No.:  0612091
seubanks@rumbeger.com
seubankssecy@rumberger.com
**SAMANTHA C. DUKE**
Florida Bar No.:  0091403
sduke@rumberger.com (Primary)
sdukesecy@rumberger.com (secondary)
**RUMBERGER, KIRK & CALDWELL, P.A.**
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133

**SCOTT M. SARASON**
Florida Bar No.:  0394718
ssarason@rumberger.com (Primary)
docketingorlando@rumberger.com and
ssarasonsecy@rumberger.com (secondary)
**RUMBERGER, KIRK & CALDWELL, P.A.**
Brickell City Tower
80 S.W. 8th Street
Suite 300
Miami, FL 33130-3037
Telephone:  (305) 358-5577
Telecopier: (305) 371-7580

*Attorneys for Defendants*

25

## ATTORNEY SERVICE LIST

| | |
|---|---|
| **Jon Herskowitz**<br>Baron & Herskowitz, LLP<br>9100 South Dadeland Boulevard<br>One Datran Center, Suite 1704<br>Miami, Florida 33156<br>jon@bhfloridalaw.com<br><br>*Attorneys for Plaintiffs* | **Charles J. LaDuca (To Apply Pro Hac Vice)**<br>**William H. Anderson (To Apply Pro Hac Vice)**<br>Cuneo Gilbert & Laduca, LLP<br>4725 Wisconsin Avenue, NW, Suite 200<br>Washington, DC 20016<br>charlesl@cuneolaw.com<br>wanderson@cuneolaw.com<br><br>*Attorneys for Plaintiffs* |

10681928.1